IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIA ALONSO,<br><br>                    Plaintiff,<br><br>   v.<br><br>APPSKETIERS, INC., JEREMY DAVENPORT, NICK BUGARA, SEAN COOK, THE TEA APP, SPILL THE TEA INC., and ASSOCIATED ENTITIES,<br><br>                    Defendants. | Civil Action No. 2:25-cv-16751-JXN-JSA |

---

**BRIEF IN SUPPORT OF RELIANCE SOFTWARE DEVELOPMENT, LLC (i/p/a APPSKETIERS, INC.), JEREMY DAVENPORT, AND NICK BUGARA'S MOTION TO DISMISS**

---

Of Counsel:
    Douglas V. Sanchez, Esq.

On the Brief:
    Christopher E. Martin, Esq.

**PRELIMINARY STATEMENT**

This matter involves alleged claims by *pro se* Plaintiff, Maria Alonso ("Plaintiff"), against Defendants, Reliance Software Development, LLC (i/p/a Appsketiers, Inc.), Jeremy Davenport, and Nick Bugara (collectively "Defendants"), and Co-defendants Sean Cook, The Tea App, and Spill The Tea, Inc. (collectively "Codefendants"). The alleged claims fail to state a claim as a matter of law. This matter should be dismissed for failure to state a claim.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

**Plaintiff's Complaint**

Plaintiff filed a Complaint in the U.S. District Court of New Jersey (See Declaration of Cristopher E. Martin, Esq. "Martin Dec." **Exhibit A**) alleging:

> **(1)** Plaintiff Maria Alonso submitted her proprietary app idea to Appsketiers in November 2024. **(2)** Plaintiff spoke with Jeremy Davenport, then a Senior Product Executive, who sent an NDA on December 2, 2024. After execution of the NDA, Plaintiff never received follow-up, contrary to industry norms. **(3)** The platform "Are We Dating the Same Guy?" existed prior to Plaintiff's submission. However, it underwent major updates beginning in December 2024, immediately after Plaintiff submitted her protected concept to Appsketiers. The suspicious timing of these updates, followed by the May 2025 rise of The Tea App, raises serious questions about whether Plaintiff's submission was misused to influence the expansion of related platforms. **(4)** Defendants appropriated Plaintiff's idea, distorted its purpose, and monetized it in a harmful manner, charging women for safety tools while exploiting their trauma. **(5)** The Tea App failed to implement safety mechanisms Plaintiff emphasized, such as ID verification and escalation for reports of abuse, instead fueling gossip-driven virality. **(6)** Plaintiff was further intimidated by CEO Nick Bugara, who threatened defamation despite Plaintiff never publicly naming Appsketiers. Such threats were designed solely to silence Plaintiff.

> Plaintiff also references a non-party, Mario Vasquez, as follows:

> **(7)** Plaintiff is not the only victim of Appsketiers' misconduct. In a public video, Mario Vasquez reported losing over $60,000 to Appsketiers. **(8)** Mr. Vasquez further stated he was offered only $5,000 as a settlement to silence his claims. When he refused, Appsketiers prolonged litigation until he could no longer afford

legal representation. **(9)** This demonstrates a pattern of fraudulent conduct, intimidation, and bad-faith tactics, corroborating Plaintiff's experience.

Plaintiff alleges the following six Claims for Relief:

    Count I: Misappropriation of Intellectual Property
    Count II: Breach of Contract/Breach of NDA
    Count III: Fraudulent Misrepresentation
    Count IV: Defamation/Retaliation Defense
    Count V: Unjust Enrichment
    Count VI: Punitive Damages due to Pattern of Fraud

Plaintiff requests the following Relief sought from the Court:

- Compensatory damages in an amount to be determined at trial;
- Punitive damages due to the willful and malicious conduct of Defendants;
- Injunctive relief preventing further exploitation of Plaintiff's intellectual property;
- An Order for full discovery of internal records, communications, and settlement agreements from Defendants;
- Court costs and such other relief as the Court deems just and proper.

The Complaint on its face fails as a matter of law to state a claim and should be dismissed.

## **STANDARD OF REVIEW**

In order for Plaintiff to continue with this litigation beyond the initial filing of her Complaint, she needs to set forth a claim with factual sufficiency to allow for a cause of action as a matter of law. *Federal Rule of Civil Procedure* 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief. *Phillips v. City of Allegheny*, 515 F.3d 224, 228-231 (3d Cir. 2008). The requirement of the "showing" as referenced in *Rule* 8 is paramount since same implicates a defendant's right to Due Process pursuant to the law; thus a plaintiff is obligated, at a minimum, to provide a defendant fair notice as to the nature of the claim(s) asserted against him (or her, or it) and as to the grounds upon which such claim(s) rests. *Id.* Without some factual allegations in the Complaint showing at least the potential for liability, a claimant cannot satisfy the requirement that he or she must provide not only fair notice, but also the grounds on which the claim rests. *Id*.

In deciding a motion to dismiss pursuant to *Federal Rule of Civil Procedure* 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a *Rule* 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* (alterations in original). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986). Instead, assuming factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the Court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

In this instance, Alonso's Complaint should be dismissed under *Federal Rule of Civil Procedure* 8(a)(2) for failure to make a "short and plain statement of the claim showing the pleader is entitled to relief," *Fed. R. Civ. P.* 8(a)(2), and under *Federal Rule of Civil Procedure, Rule* 12(b)(6) for failure to state a claim upon which relief may be granted.

# ARGUMENT

## PLAINTIFF'S COMPLAINT AGAINST DEFENDANTS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

**A. Misappropriation of Intellectual Property**

The New Jersey Trade Secrets Act, *N.J.S.A.* § 56:15-1 *et seq.*, ("NJTSA") provides protections against the misappropriation of trade secrets. It allows businesses to recover damages when a trade secret has been misappropriated. *N.J.S.A.* § 56:15-4. The Act also allows a court to enter an order to prevent actual or threatened misappropriation, condition future use of a trade secret on the payment of a royalties, and compel affirmative actions to protect the trade secret. *N.J.S.A.* § 56:15-3.

The Act defines "misappropriation" as:

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
(2) Disclosure or use of a trade secret of another without express or implied consent of the trade secret owner by a person who:
(a) used improper means to acquire knowledge of the trade secret; or
(b) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was derived or acquired through improper means; or
(c) before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired through improper means.

*N.J.S.A.* § 56:15-2.

A "trade secret" is:

information, held by one or more people, without regard to form, including a formula, pattern, business data compilation, program, device, method, technique, design, diagram, drawing, invention, plan, procedure, prototype or process, that:
(1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Id.*

To demonstrate that a trade secret was acquired through "improper means," one must show:

> the theft, bribery, misrepresentation, breach or inducement of a breach of an express or implied duty to maintain the secrecy of, or to limit the use or disclosure of, a trade secret, or espionage through electronic or other means, access that is unauthorized or exceeds the scope of authorization, or other means that violate a person's rights under the laws of this State.

*Id.*

The NJTSA allows for the recovery of damages based upon the actual loss caused by misappropriation as well based on the amount the misappropriating party was unjustly enriched by the misappropriation to the extent that it exceeds the actual loss. *N.J.S.A.* § 56:15-4(a). In addition to requiring a person or business to pay money, a court may grant injunctive relief to protect against actual or threatened misappropriation of trade secrets. *N.J.S.A.* § 56:15-6(a). In exceptional circumstances, a court may require that future use of a trade secret be conditioned on the payment of royalties. *N.J.S.A.* § 56:15-6(b). It may also order that affirmative actions be taken to protect a trade secret. *N.J.S.A.* § 56:15-6(c)

In *Oakwood Laboratories LLC v. Thanoo*, 999 F.3d 892 (3d Cir. 2021), the Third Circuit clarified the pleading standard necessary to allege a trade secret misappropriation claim under the federal Defend Trade Secrets Act ("DTSA"). This critical guidance provides a roadmap on how district courts in the Third Circuit will examine such claims, and thus how to defend or attack attempts to assert them at the pleading stage.

The Third Circuit panel first indicated that, under the DTSA, a plaintiff must establish: (1) the existence of a trade secret; (2) that is related to a product or service used in, or intended for use in, interstate or foreign commerce; and (3) the misappropriation of that trade secret. In that case, whether Oakwood sufficiently pleaded the first and third elements was at issue.

Finally, the Third Circuit clarified that trade secret misappropriation constitutes actual injury, as the loss of secrecy depreciates the value of the trade secret, and thus held that Oakwood sufficiently pleaded harm even though the Competitor had not yet launched its products.

Since "[federal]courts in this district [District of New Jersey] 'fold' the Defend Trade Secrets Act ("DTSA") analysis into the NJTSA review," the Court considers the two claims together. *Corp. Synergies Grp., LLC v. Andrews*, No. 18-13381, 2019 WL 3780098, at *3 (D.N.J. Aug. 12, 2019) (quoting *Scherer Design*, No. 18-3540, 2018 WL 3613421, at *4).

There is no heightened pleading standard for a misappropriation of trade secrets claim. *See IDT Corp. v. Unlimited Recharge, Inc.*, Civ. A. No. 11-4992, 2012 WL 4050298, at *7 (D.N.J. Sept. 13, 2012); *Oakwood Labs v. Thanoo*, 999 F.3d 892, 913 (3d Cir. 2021).

To state a claim under DTSA and the NJTSA, a plaintiff must allege:

(1) the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret; (2) that it is related to a product or service used in, or intended for use in, interstate or foreign commerce; and (3) the misappropriation of that trade secret, defined broadly as the knowing improper acquisition, or use or disclosure of the secret.

*Oakwood Labs*, 999 F.3d at 905.

Circumstantial claims may be credited at the motion to dismiss stage given the lack of discovery to inform the Complaint, so long as these claims raise a right to relief above the speculative level. *Oakwood Labs,* 999 F.3d at 913. Often, courts address a Defendant's argument to dismiss the claims based on the first and third elements, as well as for failure to allege damages.

An "app idea" is not a trade secret as defined by statutory law. Some platform by some undefined party existed prior to the "app idea." "Suspicious timing" and "serious questions" after the pre-existing platform was already active are simply unbridled speculation. The alleged connection of The Tea App at all to the moving Defendants is not set forth and certainly does not present sufficient alleged causation for any damages. Threatened defamation is not a legal claim for relief nor is it presented in a fashion to allow for Due Process. For these reasons the Complaint should be dismissed at this juncture.

4917-9818-2268, v. 3

The remainder of Plaintiff Alonso's alleged causes of action rest upon her ability to set forth a claim under the Misappropriation of Intellectual Property theory, a claim which she is unable to legally present through her filing with this Court, therefore her remaining claims also fail.

### B. Breach of Contract/Breach of NDA

Claims of breach of contract and any tortious interference with a contractual relationship, should be dismissed for the same reasons for which this Court dismisses the trade secret misappropriation claims. This District Court is unable to discern any breach of contract or tortious interference because, it is unclear exactly what Plaintiff is alleging was misappropriated. Consequently, it is unclear whether a contract was breached or interfered with.

Breach of contract and tortious interference claims can survive even if a trade secret misappropriation claim does not, as long as the scope of the contractually-defined confidential information is broader than the statutorily-defined trade secret information. *See, e.g.*, *Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d 378, 418 (E.D. Pa. 2009) ("[The] improper use of another's confidential information may qualify as unfair competition even if the conduct is not specifically actionable under the rules relating to … misappropriation of trade secrets.;" *Mabrey v. SandStream, Inc.*, 124 S.W.3d 302, 315 (Tex. Ct. App. 2003) (analyzing a contractual protection against disclosure on the basis of the contract language, not the tort law on trade-secret misappropriation where plaintiff asserted both breach-of-contract and trade-secret misappropriation claims); Restatement (Third) of Unfair Competition § 42 cmt. g (Am. Law Inst. 1995) (explaining that "a nondisclosure agreement prohibiting the use or disclosure of particular information can clarify and extend the scope of an employer's rights" beyond the protection afforded by trade secret statutes).

There is no articulation in the Complaint in the instant matter which explains how any nondisclosure agreement allows more protection than the trade secret statutes.

4917-9818-2268, v. 3

### C. Fraudulent Misrepresentation

Plaintiff claims Defendants committed fraud. To succeed on a claim of fraud, Plaintiff must provide knowingly false actions or other intent to deceive. *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 205 (3d Cir. 2022). Required knowledge that she was deceived or defrauded must be claimed.

Plaintiff has not pled a genuine dispute about the legally relevant question: whether Defendants committed fraud by making a false representation or with intent to deceive. *SodexoMAGIC*, 24 F.4th at 205. The District Court should not speculate as to (1) confusion about suspicious timing, (2) asking whether Defendants did something wrong, and (3) a showing of an intent to deceive. "Speculation and conjecture may not defeat a motion ..." *Wharton v. Danberg*, 854 F.3d 234, 244 (3d Cir. 2017) (quotation omitted) With nothing more, this matter should be dismissed.

### D. Defamation/Retaliation Defense

To state a claim for defamation under New Jersey law, Plaintiff must allege (1) that the Defendants made a false and defamatory statement of fact concerning the Plaintiff, (2) the unprivileged publication of that statement to a third party, (3) a sufficient degree of fault, and (4) damages. *DeAngelis v. Hill*, 847 A.2d 1261, 1267-68 (N.J. 2004); *see Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 189 (3d Cir. 1998) (applying the law of the forum state in a diversity action). "That the defamatory statements be 'of and concerning' a plaintiff is an indispensable prerequisite to an action for defamation." *Schiavone Const. Co. v. Time, Inc.*, 619 F. Supp. 684, 696 (D.N.J. 1985) (citing *Durski v. Chaneles*, 419 A.2d 1134 (N.J. Super. Ct. App. Div. 1980)).

"[I]f the applicability of the defamatory matter to the plaintiff depends upon extrinsic circumstances, it must appear that some person who saw or read it was familiar with the circumstances and reasonably believed that it referred to the plaintiff." *Taj Mahal Travel*, 164 F.3d at

4917-9818-2268, v. 3

189 (quoting *Gnapinsky v. Goldyn*, 128 A.2d 697, 703 (N.J. 1957)). Plaintiff has failed to present any allegation of publication.

Plaintiff alleges no loss of revenue by published defamation. On this motion to dismiss, Plaintiff has failed to allege enough facts showing that any third-party may have reasonably understood any statement to implicate the Plaintiff. *Taj Mahal Travel*, 164 F.3d at 190.

In terms of retaliation, under the New Jersey Law Against Discrimination (NJLAD), workplace retaliation claims require three elements: protected activity (such as filing discrimination complaints or participating in investigations), adverse employment action (including subtle changes like excluded meetings or altered responsibilities), and causal connection between the two. This claim fails under the NJLAD and the Conscientious Employee Protection Act (CEPA) as no allegation of an employment relationship is present.

### E.  Unjust Enrichment

To state a claim for unjust enrichment in New Jersey, a plaintiff must prove "(1) the 'defendant received a benefit' from the plaintiff; (2) 'retention of that benefit [by the defendant] without payment would be unjust'; (3) plaintiff 'expected remuneration from defendant at the time [they] performed or conferred a benefit on defendant'; and (4) the 'failure of remuneration enriched [the] defendant beyond its contractual rights.'" *Semeran v. Blackberry Corp.*, No. 2:15-CV-00750, 2016 WL 406339, at *6 (D.N.J. Feb. 2, 2016) (quoting *VRG Corp. v. GKN Realty Co.*, 641 A.2d 519, 526 (1994)). It is well established in New Jersey that it is "[e]ssential to an unjust enrichment claim" that there "is a direct relationship between the plaintiff purchaser and the defendant or 'a mistake on the part of the person conferring the benefit.'" *Id.* (quoting *Hughes v. Panasonic Consumer Elecs. Corp.*, Civ. A. No. 10-846, 2011 U.S. Dist. LEXIS 79504, at *78 (D.N.J. July 21, 2011)).

Moreover, "unjust enrichment 'requires that [a] plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.'" *Hughes*, 2011 WL 2976839 at *27 (quoting *VRG Corp.*, 641 A. 2d at 526). Renumeration generally refers to monetary compensation. *Swift v. Pandey*, Civ. A. No. 13–650, 2014 WL 1745040, at *9 (D.N.J. Apr. 30, 2014) (finding that an expectation of renumeration could include monetary compensation); *Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 464 (D.N.J. 2020) (holding that a plaintiff must show that it expected renumeration for the benefit to plead unjust enrichment, and that this can include an expectation of payment).

Here, there is no allegation that Plaintiff conferred any benefit on Defendants that was unjustly retained, or that it expected any renumeration from Defendants. The nature of Plaintiff's claim does not align with the context where an unjust enrichment claim may be pled. Plaintiff's provision of an "app idea" is insufficient to show that Defendants were enriched by the "app idea" in any manner. A Complaint alleging that "Defendants received a benefit" and does not allege that Plaintiff actually conferred a benefit fails to allow for a cause for action in this light.

Accordingly, Plaintiff has not pled a claim for unjust enrichment under New Jersey law.

### F. Punitive Damages Due to Pattern of Fraud

Under *Fed. R. Civ. P.* 9(b), where a complaint alleges "fraud or mistake," a plaintiff must describe "with particularity" the circumstances that constitute the fraud or mistake. *Fed. R. Civ. P. 9(b)*. Generally speaking, "Rule 9(b) serves to give defendants notice of the claims against them, provide[] an increased measure of protection for their reputations, and reduce[] the number of frivolous suits brought solely to extract settlements." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 270 (3d Cir. 2006) (alterations in original) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997)). The rule requires a plaintiff to plead with particularity

the facts supporting the elements of fraud. *Id.* Thus, in order to successfully plead fraud under Rule 9(b), a plaintiff must offer "some precision and some measure of substantiation." *Gutman v. Howard Sav. Bank*, 748 F. Supp. 254, 257 (D.N.J. 1990). A plaintiff may satisfy the rule's requirement "by pleading the date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004) (quotations omitted). A Plaintiff also must allege "who made a misrepresentation to whom and the general content of the misrepresentation." *Id.*

To establish a claim for fraudulent inducement, a plaintiff is required to show a defendant made a "material representation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by [the plaintiff] to [its] detriment." *Travelodge Hotels, Inc. v. Honeysuckle Enterprises Inc.*, 244 Fed. Appx. 522 (3d Cir. 2007) (citing *Jewish Center of Sussex County v. Whale*, 86 N.J. 619, 432 A.2d 521, 524 (1981). It has been noted that, "[a]s a general rule, fraudulent inducement cannot be predicated upon representations which involve things to be done in the future." *Luscko v. Southern Container Corp.*, No. 10-1249, 2010 WL 4846057 at *3 (3d Cir. November 30, 2010) (citing *Anderson v. Modica*, 4 N.J. 383, 73 A.2d 49, 53 (N.J. 1950)). However, "where a promise is given and the promisor knows at the time of promising that he has no intention of fulfilling it, the promise will constitute a misstatement of present fact and may support an allegation of fraud." *Id.* (citing *Lo Bosco v. Kure Eng'g*, 891 F. Supp. 1020, 1031 (D.N.J. 1995) (citing *Phoenix Techs., Inc. v. TRW, Inc.*, 834 F. Supp. 148, 152 (E.D.Pa.1993), and *Notch View Assocs. v. Smith*, 260 N.J. Super. 190, 615 A.2d 676, 682 (N.J. Law Div.1992))).

If Plaintiff's Complaint somehow seeks relief for promissory fraud, this District has set forth:

> "[P]romissory fraud is a false representation of intent concerning future conduct, such as a promise to perform a contract when there is no actual intent to do so." [*Protocol Elecs., Inc. v. Transolutions, Inc.*, Civil Action No. 03-4162, 2005 WL 1106132, at *6 (D.N.J. April 29, 2005) (applying Illinois law],…; [See also] Ian Ayres & Gregory

4917-9818-2268, v. 3

> Klass, Promissory Fraud, 78 N.Y.S. Bar J. 26, 27 (May 2006) ("Breach of contract is not fraud. But when the breaching party never intended to perform in the first place, the promise is fraudulent, plain and simple. Promisees have a right to think that they are bargaining for performance, not an action for breach of contract."). Promissory fraud is an obscure cause of action. *Shogen v. Global Aggressive Growth Fund, Ltd.*, Civil Action No. 04-5695, 2007 WL 1237829, at *13 n. 12 (D.N.J. April 26, 2007). This Court's research has not found any express discussion of this cause of action by any New Jersey state court. The *Shogen* court applied promissory fraud as a matter of New Jersey law, but dismissed the count on the merits at summary judgment. It appears that the majority rule among the states is to allow a cause of action for promissory fraud. *See* W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 109, at 764 (5th ed.1984) (stating that the "prevailing" view is to permit actions of promissory fraud); R. Alston Hamilton, Tennessee's Long-Awaited Adoption of Promissory Fraud, 59 Tenn. L.Rev. 325, 337 (1992) (same). Dicta in New Jersey state court appellate opinions suggest that the New Jersey Supreme Court would adopt this position. *See, e.g., Van Dam Egg Co. v. Allendale Farms, Inc.*, 199 N.J. Super. 452, 489 A.2d 1209, 1211 (N.J.Super. App.Div.1985) ("A promise to pay in the future is fraudulent if there is no present intent ever to do so.").

*Moe v. Seton Hall University*, No. 09-1424, 2010 WL 1609680, at *7 (D.N.J. April 20, 2010).

Assuming, *arguendo*, even if an action by way of promissory fraud were allowed, Plaintiff in this instance has woefully failed to present a properly articulated claim to avoid dismissal in this regard.

### G.  Individual Liability

The issue in terms of individual liability is whether Plaintiff has adequately alleged the "the knowing improper acquisition, or use or disclosure of the secret" by individual Defendants Jeremy Davenport and Nick Bugara.

Plaintiff has not sufficiently pled that these individual Defendants knowingly misappropriated any trade secrets. Both the DTSA and NJTSA specify that a defendant must have knowingly misappropriated trade secrets to be held liable. The DTSA defines "'misappropriation' as the 'acquisition of a trade secret of another by a person who **knows** or **has reason to know** that the trade secret was acquired by improper means.'" *On Location Inc. v. Popovich*, No. 22-00893, 2023 WL 2674843, at *3 (D.N.J. Mar. 29, 2023) (quoting 18 U.S.C. §§

4917-9818-2268, v. 3

1839(5)(A)–(B)(i)) (emphasis added). Likewise, the NJTSA prohibits the "[a]cquisition of a trade secret of another by a person who **knows** or **has reason to know** that a person acquired the trade secret by improper means." *Nasdaq Inc. v. Miami Int'l Holdings, Inc.*, No. 17-6664, 2023 WL 4740753, at *5 (D.N.J. July 25, 2023) (quoting N.J. Stat. Ann. § 56:15-2) (emphasis added). Finally, a common law misappropriation claim can only be sustained to the extent it does not conflict with the NJTSA, meaning that the knowledge element must also be an element of that claim. *Scs Healthcare*, 2012 WL 6565713. This means that all Plaintiff's trade secret misappropriation claims require that the user or acquirer have knowledge, or reason to know, of the improper acquisition of the secrets. *See On Location Inc.*, 2023 WL 2674843 at *3 (knowledge requirement for DTSA), *Nasdaq*, 2023 WL 4740753 at *5 (knowledge requirement for NJTSA), *Scs Healthcare*, 2012 WL 6565713 (common law trade secret claim cannot conflict with NJTSA requirements).

Courts must examine pleadings at the motion to dismiss stage to ensure that knowledge is alleged. *See Oakwood Labs*, 999 F.3d at 912.

Plaintiff has not sufficiently pled that these individual Defendants knowingly misappropriated any trade secrets. There is no language in the Complaint alleging that these individual Defendants knew, or had reason to know, that they were acquiring or using Plaintiff's alleged trade secrets. Accordingly, based on this deficiency, the trade secret misappropriation claims cannot be maintained against the individually named Defendants.

### H. Injunctive Relief

Preliminary injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Novartis Consumer Health, Inc. v. Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)). The primary purpose of preliminary injunctive relief is

"maintenance of the status quo until a decision on the merits of a case is rendered." *Acierno v. New Castle Cty.*, 40 F.3d 645, 647 (3d Cir. 1994).

In order to obtain a temporary restraining order or preliminary injunction, the moving party must show:

> a reasonable probability of eventual success in the litigation, and that it will be irreparably injured . . . if relief is not granted . . . . [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.

*Reilly v. Cty. of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (quoting *Del. River Auth. v. Transamerican Trailer Transp., Inc.*, 501 F.2d 917, 919–20 (3d Cir. 1974)).

The movant bears the burden of establishing "the threshold for the first two 'most critical' factors . . . . If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* at 179. A court may issue an injunction to a plaintiff "only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief." *AT&T v. Winback & Conserve Program*, 42 F.3d 1421, 1427 (3d Cir. 1994); *see also P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005) ("The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate."); *Ferring*, 765 F.3d at 210. A preliminary injunction also should not be issued where material issues of fact are in dispute. *Vita-Pure, Inc. v. Bhatia*, Civ. A. No. 14-7831, 2015 WL 1496396, at * 3 (D.N.J. Apr. 1, 2015) (denying injunction where factual disputes "preclude a determination that Plaintiffs have established a likelihood of success on the merits"); *Watchung Spring Water Co. v. Nestle Waters N. Am. Inc.*, Civ. A. No. 14-cv-04984, 2014 WL 5392065, at *2 (D.N.J. Oct. 23, 2014), *aff'd*, 588 F. App'x 197 (3d Cir. 2014).

Plaintiff seeks a preliminary injunction and temporary restraining order to prevent Defendants from taking some unknown action with undefined intellectual property. Plaintiff must prove that all four factors above weigh in her favor. They all fail starting with the first factor of likelihood of success on the merits overwhelmingly weighing against injunctive relief. Any application for a temporary restraining order and a preliminary injunction in this matter should be denied.

## CONCLUSION

Accordingly, since Plaintiff is unable to present the requisite minimum pleading as a matter of law to satisfy what is required to allow this action to move forward in this Court, her Complaint must be Dismissed with prejudice.

Respectfully submitted,

**CRUSER, MITCHELL, NOVITZ, SANCHEZ, GASTON & ZIMET, LLP**

By:   /s/ *Christopher E. Martin*
         Christopher E. Martin, Esq.

Dated: December 2, 2025